# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEPHEN E. CHILDS,        :
     Plaintiff,          :
                          :
     v.                    :       CIVIL ACTION NO. 24-CV-6754
                          :
CURRAN FROMHOLD      :
CORRECTIONAL FACILITY, *et al.*,  :
     Defendants.       :

## MEMORANDUM

SÁNCHEZ, J.                                          MARCH 11, 2025

Plaintiff Stephen E. Childs, a prisoner incarcerated at the Curran-Fromhold Correctional Facility ("CFCF"), initiated this civil action by filing a *pro se* Complaint asserting constitutional claims pursuant to 42 U.S.C. § 1983 against CFCF and its Warden.  (ECF No. 1.)  He subsequently filed a motion to amend his Complaint with a copy of his proposed Amended Complaint attached.[1]  (ECF No. 5.)  The Court will grant Childs's motion to amend his Complaint and deny his request to proceed *in forma pauperis* as moot because he has paid the

---

[1] An amended complaint, once submitted to the Court, serves as the governing pleading in the case because an amended complaint supersedes the prior pleading.  *See Shahid v. Borough of Darby*, 666 F. App'x 221, 223 n.2 (3d Cir. 2016) (*per curiam*) ("Shahid's amended complaint, however, superseded his initial complaint." (citing *W. Run Student Hous. Assocs. LLC v. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013)); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity.  Thus, the most recently filed amended complaint becomes the operative pleading." (internal citations omitted)); *see also Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (holding that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings").  In the caption of his Motion to file an amended complaint, Childs wrote "Curran Fromhold Correctional Facility, *et al.*" but he did not include a caption on the actual Amended Complaint.  He refers to "Defendants" throughout the Amended Complaint and mentions the Warden, the Deputy Warden of Operations, and the City of Philadelphia even though he did not specifically list them as Defendants.  (ECF No. 5 at 1, 3, 5, 6.)  The Court will discuss this ambiguity below.

filing fee in full.  For the following reasons, the Amended Complaint will be dismissed pursuant to 28 U.S.C. § 1915A.

## I.      FACTUAL ALLEGATIONS[2]

Childs alleges his due process rights have been violated for a variety of reasons associated with conditions of his confinement at CFCF, mainly taking issue with not enough access to the law library.[3]  (*See* Am. Compl. at 3-4.)  Specifically, he claims that "within the three to four hours out of the cell each day, it is impossible to: (1) use the phone; (2) take a shower; (3) get meaningful exercise; (4) get to the law library; (5) speak with non-existent Unit

---

[2]  Childs's Amended Complaint ("Am. Compl.") consists of five handwritten pages.  (ECF No. 5 at 3-7.)  He also attached two inmate grievance forms as exhibits.  (*Id.* at 8-9.)  The Court considers the entirety of the submission to constitute the Amended Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system.  The factual allegations set forth in this Memorandum are taken from Amended Complaint.  Where the Court quotes from the Amended Complaint, punctuation, spelling, and capitalization errors will be cleaned up.  The Court may also consider matters of public record when conducting a screening under § 1915.  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

[3]  Childs appears to also allege a due process claim on behalf of other wheelchair-bound inmates, whom he claims are confined more than twenty hours a day to their cells.  (Am. Compl. at 4.)  As a non-attorney proceeding *pro se*, Childs may not represent these inmates or raise claims on their behalf.  Under 28 U.S.C. § 1654, parties "may plead and conduct their own cases personally or by counsel" in the federal courts.  Section 1654 thus ensures that a person may conduct his or her own case *pro se* or retain counsel to do so.  *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause." (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990))).  Although an individual may represent himself *pro se*, a non-attorney may not represent other parties in federal court.  *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007); *see also Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim (quotations omitted)).  Accordingly, the Court will dismiss Childs's claims brought on behalf of others without prejudice, and those individuals may file suit if they wish to do so.  The Court expresses no opinion on the merits of any such lawsuit.

Team Social Staff; (6) get a haircut (if available); (7) coordinate management of outside responsibilities through a two to three week lag of U.S. Mail (staff causing the lag)."  (*Id.* at 4.) He alleges that during the four times he was allowed in the law library during a two-month period, only one hour was given "for only four to five inmates and scheduled during lockdown times," giving "plausible deniability for the staff."  (*Id*. at 4.)  Childs asserts that he required more access to the law library to "continue his legal cases, study and research into oblivion, requiring an eternal continuation of his <u>simple</u> domestic case,[4] his sophisticated civil litigation, and his other required legal matters due to the <u>known</u> due process rights, and not to mention the civil rights violations, used as a weapon here at the behest of the Defendants."  (*Id.* at 5 (emphasis in original.))

Childs filed two grievances related to his law library access and need to purchase stamps to mail legal materials, for which he states he received a response.  (*Id*. at 3, 8-9.)  He attached the grievance forms to his Amended Complaint, which are both stamped as "received" by the Deputy Warden of Operations on December 10, 2024. (*Id*. at 8-9.)  The first inmate grievance form he attached and labeled as "Exhibit A" is not signed or dated.  (*Id*. at 8.)  The description reflects that on December 7, 2024, Childs's legal materials, including case law, were taken from his cell during a shakedown.  (*Id*.)  He states in his grievance that he "cannot litigate nor prepare for his upcoming court date due to already not having access to the law library, but now he is in lockdown" and that during the shakedown, Correctional Officers "wrongly swept up his scavenged case law and court documents with his books (legal) in the leisure books assumed to

---

[4] A review of public records reveals that Childs has pending criminal charges in the Philadelphia County Court of Common Pleas for interference with custody of children, and he is represented by privately retained counsel.  *Commonwealth v. Childs*, CP-51-CR-0001401-2025 (C.P. Philadelphia).

be trash." (*Id.*)  He requested access to the law library and for his legal materials, including his

case law and legal books, to be replaced.  (*Id.*)  There is a notation in different colored ink that

appears to be a response from the CFCF staff that states, "Law library is ran when we are staffed.

Your name will be given to staff to call you down if law library is ran in your building."  (*Id.*)

The second inmate grievance form he attached and labeled as "Exhibit B" is signed by Childs

and dated on December 6, 2024.  (*Id*. at 9.)   In this grievance, he complained about the

commissary's limit on stamps and requests that he be allowed to purchase an unlimited number

of stamps or buy stamps from a social worker.  (*Id.*)  There is a notation in different colored ink

that appears to be a response from the CFCF staff that states, "Commissary policy on the order

limit on stamps cannot be changed.  It is suggested that you order the limit every week so that

you can mail out your documents." (*Id.*)  Childs alleges the responses to his grievances show

"Defendants' blatant disregard for inmates' usage of the law library utilizing unconstitutional

excuses." (*Id*. at 3.)

     Childs alleges that the "staff" at CFCF "blatantly" violated the Constitution.  (*Id*. at 6.)

As a result of these alleged constitutional violations, Childs asserts that he "will lose his house,

all his assets, his family ties and his ability to pay his attorneys, raise his four-year-old son, pay

his debts, and enable the relative safety he provides for others, including a second household he

carries for a less fortunate family friend."  (*Id*. at 4.)  Childs asks for equitable relief requesting

the Court order his "immediate release" within thirty days to: (1) a state or federal halfway

house; (2) "the custody of selected federal personal or his/an attorney;" or, (3) "just be released"

as he needs to have access to his legal materials and enough time to "study, file briefs, maintain

his assets to pay his family attorney, Guy Skiola, Esq., for his domestic matters, along with other

attorneys for his business and family matters."[5]  (*Id*. at 6-7.)  He further requests "any other equitable relief deemed fair or needed by the Honorable Court."  (*Id.* at 7 (emphasis in original).)

## II.    STANDARD OF REVIEW

Although Childs has paid the filing fee in full (*see* ECF No. 4), the Court has the authority to screen his Complaint pursuant to 28 U.S.C. § 1915A.  *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*).  Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  It is legally baseless if "based on an indisputably meritless legal theory," *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995), and factually baseless

---

[5]  Childs's requests to be released from custody will be dismissed.  His only avenue for that type of relief is to file a *habeas* petition after exhausting state remedies.  *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (stating that a § 1983 complaint that seeks release may not proceed because the proper vehicle for such claims is a petition for writ of *habeas corpus*).  Accordingly, the Court's screening of his Amended Complaint will proceed based on his request for other equitable relief, presumably seeking additional access to the law library.

"when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Neal v. Pa. Bd. of Prob. & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Childs is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). However, an unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III.    DISCUSSION

Childs brings constitutional claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

### A.    Claims Against CFCF

As an initial matter, the § 1983 claim against CFCF will be dismissed with prejudice because a prison is not a "person" under Section 1983.  *See Sanabria v. St. Lukes Hosp. (Sacred Heart Campus)*, No. 20-4091, 2020 WL 7495665, at *6 (E.D. Pa. Dec. 21, 2020); *see also Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cnty. Farms Prison*, 426 F. Supp. 271, 274 (E.D. Pa. 1976)); *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010); *Regan v. Upper Darby Twp.*, No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009), *aff'd*, 363 F. App'x 917 (3d Cir. 2010).

### B.    Claims Against Supervisory Officials

Childs also appears to name the Warden and other supervisory officials as Defendants although he did not list them in the caption of the Amended Complaint.  Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.  *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'  However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).  Also, liability under § 1983 cannot be predicated on a *respondeat superior* basis.  *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, slip op. at 3-4 (3d. Cir. Nov. 28, 2022) (*per curiam*).

Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability."  *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Chavarriaga*, 806 F.3d at 227.  Because Childs does not allege that any supervisory

official was personally involved in a denial of his constitutional rights or established a policy

with deliberate indifference to his rights, the claims against them are dismissed.

### C.    Denial of Access to the Law Library

Even if Childs had named a defendant who was personally responsible for denying him

access to the law library, his claim would still fail.  Although he cites to violations of his Fourth

and Fifth Amendment rights, this allegation is best construed as a claim for denial of access to

the courts under the First and Fourteenth Amendment.  *See Holley v. Dep't of Veteran Affairs*,

165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se*

litigant has mentioned it by name.").  "Under the First and Fourteenth Amendments, prisoners

retain a right of access to the courts."  *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008).

"A prisoner making an access-to-the-courts claim is required to show that the denial of access

caused actual injury."  *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*)

(quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)).  This is because the right of access to the

courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which

a plaintiff cannot have suffered injury by being shut out of court."  *Christopher v. Harbury*, 536

U.S. 403, 415 (2002).  In other words, a prisoner claiming that he was denied access to the courts

must allege an injury traceable to the conditions of which he complains.  *See Diaz v. Holder*, 532

F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of denial of access claims

where plaintiff failed to tie alleged deficiencies in library to harm in underlying action).  In

general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and

"arguable" claim was lost because of the denial of access to the courts.  *Christopher*, 536 U.S. at

415; *see also Tinsley v. Giorla*, 369 F. App'x 378, 381 (3d Cir. 2010) (affirming denial of

access-to-courts claim on summary judgment where pretrial detainee "could not point to any

deadline missed or any prejudice that he suffered"); *Sanders v. Rose*, 576 F. App'x 91, 94 (3d

Cir. 2014) ("[T]o sufficiently plead an access-to-courts claim . . . a non-prisoner must plead that

'official acts . . . may allegedly have caused the loss . . . of a meritorious case.'" (quotation

omitted.))  Furthermore, the right to access the courts may be satisfied if the pretrial detainee had

an attorney "because appointment of counsel is sufficient to provide a pretrial detainee with

'meaningful access to courts.'"  *Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir.

2013) (*per curiam*) (quoting *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also

Diaz,* 532 F. App'x at 63 (*per curiam*) (stating that an access-to-courts right "may be satisfied

. . . by appointing [the plaintiff] an attorney").

Childs admits that he has been allowed in the law library four times over a two-month

period, but alleges that is not enough time and he needs more access to "study and research into

oblivion" his pending criminal matter, presumably the instant civil action, and other legal

matters, otherwise "he will lose," *inter alia*, his house, assets, and ability to pay his attorneys.

(Am. Compl. at 4-5.)  A potential future loss of personal assets does not plausibly allege an

actual injury, nor does Childs tie these speculative, unattenuated allegations to his inability to

access the law library to the extent he pleases.  He also does not allege that any "nonfrivolous" or

"arguable" claim or defense in his pending legal matters were lost because of his inability to

access the law library.  Childs's vague and generalized allegations are not sufficient to state a

plausible claim.  *See Prater,* 542 F. App'x at 137 (affirming denial of access-to-courts claim

where the pretrial detainee had "not offered any other explanation of how his inability to access

the library affected his criminal proceedings"); *Diaz*, 532 F. App'x at 63 (affirming dismissal of

access-to-courts claims where plaintiff failed to tie alleged deficiencies in library to harm in

underlying action).

Even if Childs had adequately pled an actual injury, his claim would nevertheless be dismissed because the public docket for his pending criminal case reveals that he is represented by counsel in his pending criminal matter. *See Childs*, CP-51-CR-0001401-2025. He also concedes that he has the assistance of counsel in his Amended Complaint. (*See* Am. Compl. at 4, 7.) Childs cannot, therefore, state a plausible claim for denial of access to courts since he is represented by counsel in his criminal cases. *See Prater*, 542 F. App'x at 137 n.4; *see also Diaz*, 532 F. App'x at 63; *Roman v. Union Cnty. Jail*, No. 16-1049, 2017 WL 498715, at *5 (D.N.J. Feb. 7, 2017) (denying access-to-courts claim for pretrial detainee to the extent the plaintiff was represented by counsel in his criminal proceedings); *Hurdle v. Dantos*, No. 20-5595, 2020 WL 6747293, at *6 (E.D. Pa. Nov. 17, 2020) (denying claim for access to legal research in part because the pretrial detainee was represented by counsel). Accordingly, Childs's access-to-courts claim will be dismissed with prejudice.

**D.    Conditions of Confinement Claims**

Childs also claims that during the limited time each day he may leave his cell "it is impossible to: (1) use the phone; (2) take a shower; (3) get meaningful exercise; (4) get to the law library; (5) speak with non-existent Unit Team Social Staff; (6) get a haircut (if available); (7) coordinate management of outside responsibilities through a two to three week lag of U.S. Mail (staff causing the lag)." (*See* Am. Compl. at 4.) The Due Process Clause of the Fourteenth Amendment governs these types of claims brought by pretrial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective

component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id*. (internal quotations and alterations omitted).

Childs's complaints that he does not have enough time to take a shower and exercise each day does not constitute "punishment" that amounts to a constitutional violation.  *See, e.g., Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) ("Fortune complained of his inability to adequately shower and exercise for a period of fifteen days.  Although it is not clear how many times Fortune believes that he should have been permitted to engage in those activities in addition to the time he was already given to do so, he does not allege that he suffered any harm as a result of the denial of additional showers and exercise."); *Coleman v. Hodges*, No. 18-1152, 2018 WL 6618459, at *8 (W.D. Pa. Nov. 30, 2018) (citing cases), *report and recommendation adopted*, 2018 WL 6618408 (W.D. Pa. Dec. 18, 2018) ("[B]eing denied a shower for four days does not constitute a serious enough deprivation of sufficient duration to establish a constitutional violation").  His inability to get a haircut as often as he desires is also not the basis for a plausible claim.  *See Williams v. Delaware Cnty. Bd. of Prison Inspectors*, No. 17-4348, 2018 WL 3235788, at *8 (E.D. Pa. July 2, 2018) (finding the failure to provide a haircut does not meet "a deprivation of liberty under the Fourteenth Amendment's Due Process Clause applicable to pretrial detainees.").  The Court is unable to discern any constitutional violation arising from his issues with speaking to the "non-existent Unit Team Social Staff" and experiencing up to a three-week delay in U.S. Mail, *see* Am. Compl. at 4, particularly since Childs fails to allege that he suffered any harm arising from these occurrences.

Lastly, "[p]risoners 'ha[ve] no right to unlimited telephone use,' and reasonable restrictions on telephone privileges do not violate their First Amendment rights."  *Almahdi v.*

*Ashcroft*, 310 F. App'x 519, 522 (3d Cir. 2009) (*per curiam*) (rejecting First Amendment claim based on telephone restrictions where "Almahdi makes no assertion—and there is no evidence — that he lacked alternative means of communicating with persons outside the prison") (citing *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002)). "Rather, a prisoner's right to telephone access is 'subject to rational limitations in the face of legitimate security interests of the penal institution.'" *Id.* (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)); *see also Randall v. Cnty. of Berks, Pennsylvania*, No. 14-5091, 2015 WL 5027542, at *17 (E.D. Pa. Aug. 24, 2015) (explaining that "[a] pretrial detainee's right to telephone access is subject to rational limitations in the face of legitimate security interests of the penal institution" (internal quotations omitted)). Accordingly, the conditions of confinement claims will be dismissed.

### E.    Municipal Liability

To the extent he attempted to do so, Childs has not alleged a basis for municipal liability. He refers to "Defendants" throughout his Amended Complaint and mentions the City of Philadelphia even though he does not specifically list it as a Defendant. (*See* Am. Compl. at 1, 3, 5, 6.)

Any claims against the City of Philadelphia also cannot proceed as pled. To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). It is not enough, however, to allege the existence of a policy or custom. "A plaintiff must

also allege that the policy or custom was the 'proximate cause' of his injuries." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.*  Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support a claim against the City. *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*." (citing cases)).  "It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *See Mulholland v. Gov't Cnty. of Berks, Pa*., 706 F.3d 227, 238 n.15 (3d Cir. 2013).

Initially, the Court notes that if there is no underlying constitutional violation, *Monell* liability cannot exist. *See Bridges v. Scranton Sch. Dist*., 644 F. App'x 172, 178 (3d Cir. 2016) ("Appellants cannot recover from the School District under Section 1983 for a failure to train because there was no underlying constitutional violation.").  As the Court has determined that none of Childs's underlying claims are plausible, his claim against the City also fails.  Moreover, Childs makes only vague, generalized, and conclusory allegations that are entirely insufficient to support a *Monell* claim against the City.  He asserts that the "County Jail Policy under the City of Philadelphia" is a "flagrant disregard for the United States Constitution."[6]  (Am. Compl. at 6.) Childs not only fails to identify the specific policy or custom of the City he is referring to, but also fails to allege that he was injured due to that policy or custom, both of which are

---

[6] Childs makes a reference to the "Thomas Remick Settlement Agreement," but fails to make any connection to how that agreement or underlying lawsuit is relevant to this unrelated, separate cause of action.  (*See* Am. Compl. at 2-3, 6.)

additionally fatal to any *Monell* claim.  *See also Groman v. Twp. of Manalapan*, 47 F .3d 628,

637 (3d Cir. 1995) (holding that "vague assertions" of a policy or custom, without more, are not

sufficient to state a claim under *Monell*).  Accordingly, his claims against the City are not

plausible as pled and will be dismissed.

>    **F.    Claims Based on Grievances**

Finally, to the extent Childs attempted to assert a stand-alone claim against the Warden,

the Deputy Warden of Operations, or other CFCF staff members based on the grievance process,

it will be dismissed because "prisoners do not have a constitutional right to prison grievance

procedures."  *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey*

*v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001), and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.

1991) (*per curiam*)).  Accordingly, allegations such as those raised by Childs predicated on

failures of the grievance process or improper handling of or response to grievances do not give

rise to a constitutional claim.  *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d

Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-

standing constitutional right to an effective grievance process, Woods cannot maintain a

constitutional claim against Lucas based upon his perception that she ignored and/or failed to

properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F.

App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a

constitutionally protected right to the prison grievance process" and that "a state grievance

procedure does not confer any substantive constitutional right upon prison inmates" (internal

quotations and citations omitted)).

Moreover, a prison official's involvement in the grievance process is not sufficient to

allege liability under § 1983 for the events that gave rise to the grievance.  *See Curtis v. Wetzel*,

763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); *see also Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews.").  All claims based on the handling of grievances will be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss the Amended Complaint pursuant to 28 U.S.C. § 1915A.  Childs's claims brought on behalf of others will be dismissed without prejudice.  Childs's remaining claims will be dismissed with prejudice because an attempt to amend these claims would prove futile.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that complaints dismissed under the Prison Litigation Reform Act should be with leave to amend "unless amendment would be inequitable or futile").

An appropriate Order will be entered separately.  *See* Federal Rule of Civil Procedure 58(a).

BY THE COURT:

/s/ Juan R. Sánchez

**JUAN R. SÁNCHEZ, J.**